**6**
**LAW OFFICES OF GABRIEL LIBERMAN, APC**
Gabriel E. Liberman (SBN 303010)
Gabe@4851111.com
1545 River Park Drive, Suite 530
Sacramento, California 95815
Telephone:     (916) 485-1111
Facsimile:     (916) 485-1111

Proposed Attorney for THE MESA LAGUNA RIDGE, LP

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>**THE MESA LAGUNA RIDGE, LP**<br>*dba THE MESA AT LAGUNA RIDGE*<br><br>Tax ID / EIN: 38-3993725<br><br>       Debtor, | Case No. 2025-21744-C-11<br>Chapter 11<br>DCN: GEL-1<br><br>**SUPPLEMENT TO MOTION TO USE CASH COLLATERAL AND GRANT ADEQUATE PROTECTION**<br><br>Date:     May 28, 2025<br>Time:     11:00 A.M.<br>Location: 501 I Street, 6th floor,<br>             Courtroom 35, Dept. C<br>             Sacramento, CA<br><br>Judge:    Honorable Christopher M. Klein |

      THE MESA LAGUNA RIDGE, LP, a California limited partnership, the Debtor and Debtor-in-Possession (the "Debtor") by and through their proposed attorney, Gabriel E. Liberman, respectfully submits this Supplement in connection with its requests an order authorizing it to use "cash collateral" in form of rental income, account receivables, equipment, machinery, tools and materials which may be used to generate post-petition proceeds (the "Cash Collateral"), and grant adequate protection to secured

creditor, Construction Loan Services II, LLC, Servicer and agent for Saluda Grade Alternative Mortgage Trust 2021-BC1 ("Construction Loan Services") that may have an interest in the Cash Collateral (the "Motion"), pursuant to Bankruptcy Code §§ 363(c)(2)(A) and 105(a), as well as Rule 4001-1(c) of the Local Rules of Bankruptcy Practice for the Eastern District of California, and respectfully represents as follows:

## General Status of the Case

1. On April 18, 2025, Construction Loan Services, filed its opposition to Debtor's Motion related to its security interest held by a first deed of trust with assignment of rents against the Mesa Apartments property. [See ECF 13].

2. The objection was based on three primary arguments, subject to further briefing by Construction Loan Services, which has not come due as of filing this Supplement, and are as follows:

   a. Debtor's proposed adequate protection payments do not adequately protect Lender's security interest in the Personal Property;

   b. The proposed replacement lien fails to adequately protect Lender's security interest because Debtor has provided no information regarding Debtor's post-petition assets and Debtor has not provided prior financial records to show historical performance with respect to collection of rents; and

   c. Debtor's pre-petition cash is subject to the Cash Collateral.

3. On April 21, 2025, Debtor timely filed the balance of its schedules, statement of financial affairs and related deficient documents.

## Issue One - Adequate Protection Payment and Duration

4. Debtor initially proposed an adequate protection payment of $20,000 to Construction Loan Services for the six (6) month period. Debtor has agreed to increase this payment to $75,000 starting June 1, 2025. An amended budget is attached hereto as **Exhibit A.**

5. Debtor further modifies its Motion by reducing the requested period from six (6) period through October 31, 2025 to July 31, 2025. By shortening the requested time, Debtor believes it has reduced further risk to Construction Loan Services.

6. The current status of construction to complete phase 2 has slowed since Construction Loan Services stopped funding the project. Debtor has slowed the project down but has followed through and kept the process active to avoid prior approvals expiring. Prior to the filing of this case, Debtor was approximately 2 weeks from getting approval from the local water agency, which was essentially the last agency that it needed approvals from. The City of Elk Grove would require pre-petition due and deposits to be paid before they would continue monitoring and approving the next phase. Debtor estimates it is 30-60 days from receiving final approvals, assuming no changes to its prior approved plan would be required.

7. The Mesa Apartments was appraised as of March 20, 2025, with a current market value as-is with 55 units at $11,280,000.00. Hypothetical values as if completed and stabilized with 198 units was appraised at $57,300,000.00. A copy of the unauthenticated appraisal report is attached hereto as **Exhibit B.**

## Issue Two – Replacement Lien

8. As part of the initial Motion, Debtor disclosed the following assets as "cash collateral" subject to a replacement lien secure Construction Loan Services; collectible account receivables of $15,459.00, unencumbered office equipment, fixtures and electronics of $5,500, inventory, parts and

3

supplies of $5,000.00, and future rental income and profits from the Mesa Apartments of approximately $120,000 per month.

9. Now having filed the balance of schedules, two additional assets not subject to creditor liens (e.g. equipment financing lien against fitness equipment); 1) petty cash: $1,000 and 2) a refundable deposit held by Southwest Private Investments[1] for $58,500.00.

10. Debtor has also provided financial records requested by Construction Loan Services, which shows Debtor's occupancy rate averaging 93%, or less than 5 vacant units of its available 55. For the one year period preceding the filing of the case, March 2024 through March 2025, Debtor's gross rental income was $1,483,130 or $123,594 per month**.** The average rent is approximately $2,400 and at 100% occupancy, the maximum gross rental income would yield $132,000 a month [$2,400 <u>times</u> 55). Taking the average of $123,594 <u>divided</u> by $132,000 equals 93%. Thus, over the 12 months preceding the filing of this case, Debtor's average occupancy has been stable at 93%. A true and accurate copy of Debtor's profit and loss from March 2024 through March 2025 is attached hereto as **Exhibit C.**

11. Construction Loan Services had also requested rent rolls for the Mesa Apartments for the prior twelve months which are attached as **Exhibit D.**

### Issue Three - Cash in Debtor's Bank Account are Not Cash Collateral

12. As of the Petition Date, Debtor was holding approximately $496,976 in two depository

---

[1] As listed in Schedule B: Refundable Loan Deposit held by Southwest Private Investments, LLC for expenses associated with financing the completion of the Mesa at Laguna Ridge apartment project, including but not limited to obtaining appraisals, document preparation and funding.

4

accounts at Cathay Bank, checking account number XXXXX-6665 and savings account number XXXXX-8033. Debtor was the sole name listed on both depository accounts. A true and accurate copy of the Cathay Bank statements is attached hereto as **Exhibit E**.

13. A security interest in a deposit account as original collateral may be perfected only by obtaining control over the account. See UCC § 9-312(b)(1). Thus, a UCC-1 financing statement covering deposit accounts will have no effect, as argued here.

14. The requirements for obtaining control of a deposit account are set out in UCC § 9-104(a). That section provides that a secured party has control of a deposit account if;

> (1) the secured party is the bank with which the deposit account is maintained;
>
> (2) the debtor, the secured party, and the bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the account without further consent by the debtor; or
>
> (3) the secured party becomes the bank's customer with respect to the deposit account.

15. In essence, a secured party has control when it is able to dispose of the deposit account without further cooperation from the depositor of record (the debtor). A secured party may have control over the deposit account even though the depositor-debtor retains the right to direct the disposition of funds from that account. See UCC § 9-104(b). Thus, if the secured party also is the depositary bank, Article 9 provides for automatic perfection by control. If the secured party is not the depositary bank, it may obtain control by either executing a control agreement authenticated by both the debtor and the depositary bank, or by becoming the depositary bank's customer with respect to the deposit account.

16. Construction Loan Services is neither the depository bank, nor has obtained an

authenticated control agreement between the Debtor and Cathay Bank nor has become the owner of the deposit account.

17. Therefore, Debtor argues the cash in the account is not subject to Construction Loan Services' post-petition lien or Cash Collateral.

**WHEREFOR**E, Debtor prays for an order:

1. Authorizing final approval of cash collateral use starting on the Petition Date and continuing through July 31, 2025 in the total amount as set forth in the Amended Budget attached as Exhibit A with a 15% variance;

2. Granting adequate protection to Construction Loan Services in the form of replacement liens and monthly adequate protection payments; and

3. For such other and further relief as is just and proper.

Dated: May 21, 2025

                                    LAW OFFICES OF GABRIEL E. LIBERMAN, APC

                          By:    */s/* Gabriel E. Liberman
                                      Gabriel E. Liberman
                                      Proposed Attorney for Debtor-in-Possession